UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MAURICE WILSON,

                                Plaintiff,                              **REPORT AND RECOMMENDATION**

                -against-                                          CV 16-3571 (JS)(AYS)

COUNTY OF NASSAU, ARMOR CORRECTIONAL
HEALTH MEDICAL SERVICES OF NEW YORK,
INC., P.C., ARMOR CORRECTIONAL HEALTH
SERVICES OF NEW YORK, INC., and MICHAEL
FRANCIS,

                                Defendants.
-------------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       Before the Court, on referral from the Honorable Joanna Seybert, are separate motions for summary judgment by: (1) Defendant County of Nassau and (2) Defendants Armor Correctional Health Medical Services of New York, Inc., P.C., Armor Correctional Health Services of New York, Inc. and Michael Francis, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Also before the Court is Plaintiff's cross-motion for summary judgment. For the following reasons, this Court respectfully recommends that Defendants' motions be granted on the ground that Plaintiff failed to exhaust his administrative remedies prior to commencing this action. The Court further recommends that Plaintiff's motion for summary judgment be denied in its entirety.

## BACKGROUND

       The relevant facts, as set forth below, are taken from those portions of the parties' Local Civil Rule 56.1 statements upon which they agree, as well as the documents offered by the parties in support of and in opposition to the within motions.

1

Plaintiff, Maurice Wilson ("Plaintiff" or "Wilson"), is a former detainee at the Nassau County Correctional Center ("NCCC"), who was confined to the facility from September 30, 2014 until on or about June 15, 2016. (Amor Def. Local Civ. R. 56.1 Statement ("Armor Def. 56.1") ¶ 1; County Def. Local Civ. R. 56.1 Statement ("County Def. 56.1") ¶ 1; Pl. Local Civ. R. 56.1 Statement ("Pl. 56.1") ¶1.) Defendant Armor Health Care ("Armor"), sued herein as Armor Correctional Health Medical Services of New York, Inc., P.C. and Armor Correctional Health Medical Services of New York, Inc., is a foreign corporation authorized to conduct business in the state of New York, who provided medical and health services to inmates at NCCC pursuant to a contract with Defendant County of Nassau (the "County"). (Armor Def. 56.1 ¶ 2; Pl. 56.1 ¶¶ 3, 5.) Defendant Michael Francis ("Francis" and, with Armor, the "Armor Defendants") is a physician assistant, licensed in the state of New York, who was employed by Armor to provide medical treatment to inmates at NCCC. (Armor Def. 56.1 ¶ 3; Pl. 56.1 ¶ 4.)

On February 27, 2016, while incarcerated at NCCC, Plaintiff was attacked by three other inmates and was slashed across the face by one of the inmates, resulting in a deep laceration to his left cheek. (Armor 56.1 ¶ 5; County Def. 56.1 ¶¶ 2-4; Pl. 56.1 ¶¶ 10-11.) Following the assault, Plaintiff was transferred by Nassau County correctional officers to the NCCC infirmary. (County Def. 56.1 ¶ 11; Pl. 56.1 ¶ 12.) While in the NCCC infirmary, Plaintiff did not consent to treatment by NCCC medical staff and requested to be transferred to an outside hospital for treatment. (Armor Def. 56.1 ¶¶ 6, 10; Pl. 56.1 ¶¶ 13-15.) Plaintiff's request to be transferred to an outside hospital was denied and he was treated by Defendant Francis at the NCCC infirmary. (Armor Def. 56.1 ¶¶ 6, 10; Pl. 56.1 ¶¶ 19, 21.) Plaintiff does not know who denied his request to be sent to an outside hospital. (Armor Def. 56.1 ¶¶ 10, 15.)

Francis examined Plaintiff's laceration, measuring the wound's length to be approximately 11.5 centimeters. (Pl. 56.1 ¶ 21(a).) Francis then applied an injection to the wound to numb it and placed sutures to close the wound. (Def. Armor 56.1 ¶ 11; Pl. 56.1 ¶ 21(a)-(b).) After suturing, Francis applied triple antibiotic ointment and a dry sterile dressing to Plaintiff's wound. (Pl. 56.1 ¶ 21(b).) On March 4, 2016, Armor personnel performed a follow-up visual examination of Plaintiff's sutures for infection and then removed the sutures. (Armor Def. 56.1 ¶ 17; Pl. 56.1 ¶ 21(b).) Armor personnel instructed Plaintiff to apply Bacitracin ointment to the wound twice per day for one week. (Pl. 56.1 ¶ 21(b).) Following the removal of his sutures, Plaintiff developed a raised, discolored and disfiguring scar on the left side of his face that he alleges was caused by the medical treatment provided by Francis. (Armor Def. 56.1 ¶ 8; Pl. 56.1 ¶ 22.)

Plaintiff filed at least one grievance with respect to the medical care he received at the NCCC infirmary, specifically with regard to his request to be transferred to an outside hospital for treatment. (Armor Def. 56.1 ¶ 16; County Def. 56.1 ¶ 12.) Plaintiff easily obtained the grievance form and was in no way prevented or inhibited from filing the grievance. (County Def. 56.1 ¶¶ 16-17.) Nor was Plaintiff threatened with retaliation or any harm if he filed a grievance. (County Def. 56.1 ¶ 18.) Plaintiff was ultimately advised by an unnamed person that the issue was "non-grievable" and did not appeal the disposition of that grievance. (Def. Armor 56.1 ¶ 16; County Def. 56.1 ¶ 14.)

Plaintiff commenced the within action, pro se, on June 15, 2016. (Compl., Docket Entry ("DE") [1].) In April 2017, counsel appeared in this action on behalf of Plaintiff and filed a motion to amend the Complaint, (DE [33]), which, although unclear from the docket, appears to either have been granted or stipulated to by Defendants. Via stipulation, a Second Amended

3

Complaint was then filed on July 24, 2017, which remains the operative pleading herein. (DE [47].) Defendants filed Answers to the Second Amended Complaint in August 2017 (DE [57], [60].) By stipulation dated February 26, 2020, Plaintiff voluntarily withdrew all claims alleged against former defendant Michael J. Sposato, as well as all claims against "John" and "Jane" Doe defendants. Plaintiff also withdrew the First, Third and Fifth causes of action in their entirety. (DE [133].) All parties now move for summary judgment on all remaining claims in this action.

## DISCUSSION

I.   Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

4

II.     The Prison Litigation Reform Act

The Prison litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "This requirement applies to all inmate suits about prison life, regardless of the relief offered through administrative procedures." Hall v. Annucci, No. 19-CV-5521, 2022 WL 3903255, at *5 (S.D.N.Y. Aug. 30, 2022) (quoting Booth v. Churner, 532 U.S. 731, 741 (2001)) (additional citation and internal quotation marks omitted). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Williams v. Sposato, No. 13-CV-4247, 2019 WL 5310222, at *5 (E.D.N.Y. Oct. 21, 2019) (quoting Jones v. Bock, 549 U.S. 199, 211 (2007)) (additional citations omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Angulo v. Nassau County, 89 F. Supp. 3d 541, 549 (E.D.N.Y. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 90-91 (2006)). Accordingly, the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Angulo, 89 F. Supp. 3d at 549 (quoting Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009)).

The defendant "bears the burden of establishing a plaintiff's failure to exhaust administrative remedies since it is considered an affirmative defense." Hubbs v. Suffolk County Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015). A defendant may establish that "a grievance process exists and applies" by "pointing to legally sufficient source[s] such as statutes, regulations, or grievance procedures." Id. (quoting Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir.

5

2004)) (alteration in original). The question of exhaustion under the PLRA is a matter for the Court decide. See Hubbs, 788 F.3d at 59 ("Whether an administrative remedy was available to a prisoner . . . is ultimately a question of law, even when it contains factual elements."); Messa v. Goord, 652 F.3d 305, 309 (2d Cir. 2011) ("[T]he presence of disputed material facts [does not] convert[] exhaustion into a jury issue.")

    A.      Proper Exhaustion

"'Proper exhaustion' requires a prisoner to use 'all steps that the agency holds out, and doing so properly (so that the agency addresses the issue on the merits).'" Young v. Sposato, No. 12-CV-2850, 2014 WL 109083, at *6 (E.D.N.Y. Jan. 13, 2014) (quoting Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d Cir. 2006)) (emphasis in original) (additional citation omitted). Accordingly, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules." Ruggiero, 467 F.3d at 176 (quoting Woodford, 548 U.S. at 90). The PLRA's exhaustion requirement is not satisfied by "untimely or otherwise procedurally defective attempts to secure administrative remedies." Ruggiero, 467 F.3d at 176 (citing Woodford, 548 U.S. at 83-84).

The NCCC's Inmate Handbook (the "Handbook"), effective as of April 1, 2010, and of which every inmate receives a copy upon his or her arrival at NCCC, provides a three-step procedure with respect to inmate grievances. (Handbook at 4-5, annexed to Ben-Sorek Decl. at Ex. G.) To initiate the process, an inmate must complete a grievance form, which is available in the Inmate Law Library and during Inmate Council meetings, and, upon request, in the housing area officer's station. (Handbook at 4.) A grievance must be filed within five days of the date of the act or occurrence leading to the grievance. (Handbook at 4.) After completing the grievance

6

form, the inmate must place it in the grievance mailbox located in each housing area, where it will be removed by Grievance Unit staff and a grievance receipt will be issued. (Handbook at 4.)

The grievance form is then reviewed by the Grievance Coordinator (the "Coordinator"), who will issue a written finding within five business days of receipt of the grievance. (Handbook at 4.) "Such finding will specify the facts and circumstances underlying the Coordinator's determination." (Handbook at 4.) A copy of the Coordinator's finding is provided to the inmate. (Handbook at 4.)

The next step in the grievance process allows for an appeal of a negative finding to the Chief Administrative Officer, which the inmate must make within two business days of receipt of the Grievance Coordinator's written finding. (Handbook at 4.) The Chief Administrative Officer then has five business days to issue a written determination on the grievance appeal. (Handbook at 5.)

The final step of the process allows the inmate to appeal, within three business days of receipt, a grievance denied by the Chief Administrative Officer to the New York State Commission on Correction. (Handbook at 5.) The Grievance Coordinator "will mail the appeal, the accompanying investigation report and all other pertinent documentation to the Commission's Citizens Policy and Complaint Review Council." (Handbook at 5.) The Complaint Review Council will issue a written determination of the appeal within forty-five business days of receipt. (Handbook at 5.)

Upon his entrance to NCCC, Plaintiff acknowledged receiving a copy of the NCCC Rules and Regulations. (Ben-Sorek Decl., Ex. H.) Plaintiff also testified during his deposition that he was aware of the grievance procedure in place at NCCC and that he "put plenty of grievances in." (Pl. Dep. 141, annexed to Ben-Sorek Decl. at Ex. F.) The documents submitted, as well as

7

Plaintiff's deposition testimony, satisfy Defendants' initial burden of demonstrating that a grievance procedure exists at NCCC. Accordingly, the burden shifts to Plaintiff to demonstrate, "by citation to evidence which would be admissible at trial," Williams, 2019 WL 5310222, at *6 (citing Fed. R. Civ. P. 56), "that other factors rendered that process 'unavailable as a matter of fact.'" Id. (quoting White v. Velie, 709 F. App'x 35, 38 (2d Cir. Sept. 15, 2017)).

B.  Availability of Administrative Remedies

Prisoners are exempt from the exhaustion requirement where administrative remedies are "unavailable." Ross v. Blake, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable where "(1) the grievance process 'operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) the process is 'so opaque that it becomes, practically speaking, incapable of use'; or (3) 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Rucker v. Giffen, 997 F.3d 88, 93 (2d Cir. 2021) (quoting Ross, 578 U.S. at 643-44).

Here, although disputed by the County of Nassau (the "County"), Plaintiff's deposition testimony is that he filed a grievance by placing it in the grievance mailbox at NCCC, complaining that he was not sent to an outside hospital and that, as a result, his scar caused him pain. (Pl. Dep. 77-78.) Plaintiff further testified that his grievance was not resolved prior to his release from NCCC and that he did not file any appeals. (Pl. Dep. 78, 142.) Plaintiff now argues that he should be excused from the exhaustion requirement because NCCC personnel told him that his complaint was non-grievable. Plaintiff further argues that he should be found to have satisfied the exhaustion requirement through "informal channels." (Pl. Memo of Law in Opp'n to Armor Def. Mot. for Summ. J. 5.) This Court finds both arguments to be without merit.

8

1. <u>Grievability</u>

Plaintiff states in his opposition to the Armor Defendants' motion as follows:

> Under 9 NYCRR 7032.4(h) grievances regarding <u>inter alia</u>, issues that are outside the authority of the chief administrative officer to control, such as ARMOR's medical decision-making, are indeed non-grievable and may not be appealed to the chief administrative officer or the Citizens' Policy and Complaint Review Council. It is axiomatic that when a grievance is deemed non-grievable, and, thus, there remains no means to appeal that decision, then all administrative remedies have as a matter of law been exhausted.

(Pl. Mem. of Law in Opp'n to Armor Def. Mot. for Summ. J. 3.) Plaintiff cites to no caselaw to support this proposition.

A review of the actual section of the New York Administrative Code finds no mention of the terms "medical decision-making." Rather, the text of the regulation is as follows: "Grievances regarding dispositions or sanctions from disciplinary hearings, administrative segregation housing decisions, issues that are outside the authority of the chief administrative officer to control, or complaints pertaining to an inmate other than the inmate actually filing the grievance are not grievable . . . ." 9 N.Y.C.R.R. 7032.4(h). Nothing in the regulation states that medical decisions are non-greivable. Moreover, there is abundant caselaw holding just the opposite. <u>See, e.g.</u>, <u>Jenkins v. Haubert</u>, 179 F.3d 19, 28 (2d Cir. 1999) (noting that the phrase "conditions of confinement" has a plain meaning that "encompasses all conditions under which a prisoner is confined," including "deprivation of . . . medical care"); <u>Ritter v. Montoya</u>, No. 20-CV-1114, 2021 WL 230205, at *2 (S.D.N.Y. Jan. 22, 2021) ("Specifically, the PLRA's exhaustion requirement applies to suits alleging inadequate medical treatment."). Accordingly, there is no question that Plaintiff's complaint about his medical treatment – or lack thereof – was grievable.

Plaintiff next argues that after filing his grievance, he received "some kind of notice" from an unnamed person that his complaint was non-greivable. (Pl. Dep. 82.) That "notice" has not been submitted to the Court as evidence in connection with the within motions, nor is it any longer in Plaintiff's possession, as he testified at his deposition that he left it at NCCC when he was released. (Pl. Dep. 82.) Accordingly, other than Plaintiff's testimony, there is nothing to support his claim that he was advised his complaint was non-grievable. Such conclusory assertions are insufficient to defeat summary judgment. See Flores v. United States, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of [the non-moving party], . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.") (citation and internal quotation marks omitted) (alteration in original).

        2.     Exhaustion Via "Informal Channels"

Plaintiff also argues that he satisfied the PLRA's exhaustion requirement through "informal channels" when an inspector for the County – Joseph Orlando – conducted an investigation into the incident underlying this action, during which he observed the wound and bandage on Plaintiff's face. According to Plaintiff, Inspector Orlando failed to perform any subsequent interview to determine what, if any, follow-up medical treatment Plaintiff received and as such, Plaintiff should be deemed to have satisfied the exhaustion requirement. (Pl. Mem. of Law in Opp'n to Armor Def. Mot. for Summ. J. 6.)

Plaintiff is correct that the resolution of grievances "through informal channels satisfies the exhaustion requirement, in certain circumstances. Roland v. Murphy, 289 F. Supp. 2d 321, 323 (E.D.N.Y. 2003) (citing Marvin v. Goord, 255 F.3d 40, 43 n.3 (2d Cir. 2001)) (additional citation omitted). However, Inspector Orlando's deposition testimony makes clear that the

10

investigation into the incident that took place on February 27, 2016 solely involved the inmate on inmate assault that Plaintiff suffered, for which Plaintiff has voluntarily dismissed all claims in this action. No investigation was conducted with respect to the medical treatment Plaintiff received, which is the issue he was required to grieve before commencing this action. (Orlando Dep., annexed to McLaren Decl. at Ex. J.) Moreover, Inspector Orlando specifically testified during his deposition that Plaintiff did not make any complaints about the medical treatment he received at NCCC during his interview with the investigator. (Orlando Dep. 69.) Nor did he complain that the treatment he received was against his will. (Orlando Dep. 69.) Accordingly, this Court finds there was no exhaustion via informal channels with respect to Plaintiff's complaint regarding inadequate medical care.

    C.    <u>Failure to Appeal</u>

Plaintiff affirmatively testified at his deposition that he filed "plenty of grievances" prior to the one at issue herein. (Pl. Dep. 141.) He further testified that he was aware of the grievance procedure and that he had no difficulty obtaining a grievance form for the incident underlying this action. (Pl. Dep. 141.) Plaintiff also testified that no one prevented him from filing a grievance or threatened him with retaliation for filing a grievance. Nor was Plaintiff actually retaliated against once he filed the grievance at issue herein.[1] (Pl. Dep. 143-44.) Finally, Plaintiff testified that he did not appeal any decision regarding his grievance. (Pl. Dep. 142.)

---

[1] In his declaration in opposition to the Armor Defendants' motion for summary judgment, Plaintiff now states that he was "extremely concerned about potential retaliation" while incarcerated at NCCC, which "discouraged [him] from insisting on . . . filing a grievance." (Pl. Decl. ¶ 11, annexed to Beradrdelli Decl. at Ex. B.) This declaration completely contradicts Plaintiff's prior deposition testimony and may not be used to create an issue of fact on summary judgment. See <u>Hayes v. New York City Dep't of Corr.</u>, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.") (citation omitted).

11

As evidenced by Plaintiff's own testimony, there is nothing before the Court indicating that prison officials prevented Plaintiff from exhausting his administrative remedies. Rather, as demonstrated by Plaintiff's own testimony, he "knew the steps that he was required to take to exhaust his administrative remedies; he just chose not to follow them." Taylor v. New York City Dep't of Corr., 849 Fed. App'x 5 (2d Cir. 2021). As Plaintiff stated at his deposition, despite filing the grievance at issue herein, he took no steps to resolve his grievance prior to his release from NCCC. Nor did he appeal any finding with respect to the grievance he filed, including the purported "notice" he received that his complaint was non-grievable. "The administrative exhaustion process is not unavailable for purposes of the PLRA when an inmate simply chooses not to avail himself of it." Taylor, 849 Fed. App'x 5; see also Dean v. Iozzia, No. 20-729, 2022 WL 619693, at *1 (2d Cir. Mar. 3, 2022) ("Because an appeal was possible, administrative remedies were available to [plaintiff]. [Plaintiff] therefore failed to show that he exhausted his administrative remedies and the district court properly granted summary judgment to the defendants."); Williams, 2019 WL 5310222, at *9 ("Since administrative remedies were available to [plaintiff], and he did not properly exhaust any of his remaining claims . . . the PLRA precludes him from proceeding with those claims in this Court.").

Based on the foregoing, this Court finds that Plaintiff failed to exhaust his administrative remedies, as required by the PLRA, prior to commencing this action. As such, his federal claims fail as a matter of law. This Court respectfully recommends that Defendants' motions for summary judgment be granted on this ground and that Plaintiff's cross-motion for summary judgment be denied in its entirety.

III.   Plaintiff's State Law Claims

Having found that Plaintiff's federal claims fails as a matter of law, there is no longer any independent basis for federal jurisdiction in the within action. Although the Court has discretion to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, see 28 U.S.C. § 1367(a), this Court recommends that the District Court decline to do so. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Accordingly, this Court respectfully recommends that Plaintiff's state law claims be dismissed without prejudice.[2]

IV.   Counsel for the Armor Defendants' Motion to Withdraw as Counsel

Although not included in the referral to this Court for report and recommendation, the Court notes that there is a pending request by counsel for the Armor Defendants to be relieved from further representation of its client. Counsel for the Armor Defendants – Lewis Brisbois Bisgaard & Smith LLP ("Lewis Brisbois") – originally moved to withdraw by motion dated November 7, 2022, and filed on ECF on November 8, 2022. (DE [170].) The District Court held a hearing on the motion on January 5, 2023, at which time it reserved decision pending the outcome of the motions for summary judgment. (DE [173].)

By letter dated November 15, 2023, Lewis Brisbois advised this Court that, on February 2, 2023, it commenced an adversarial proceeding against Armor in Nassau County Supreme

---

[2] "Since [New York's CLPR § 205] allow[s] a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations, [plaintiff] will not be unduly prejudiced by the dismissal of [his] state law claims." Trinidad v. New York City Dept. of Corr., 423 F. Supp. 2d 151, 169 (S.D.N.Y. Mar. 21, 2006) (citation omitted) (alterations in original).

13

Court for unpaid legal fees owed by Armor. (DE [177].) By that same letter, Lewis Brisbois again reiterated its request to be relieved as counsel for the Armor Defendants.

In light of the adversarial proceeding commenced by Lewis Brisbois against its client, there is clearly a conflict of interest precluding the firm from further representation of the Armor Defendants. Accordingly, this Court sua sponte recommends that the motion by Lewis Brisbois to be relieved as counsel for the Armor Defendants be granted.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendants' motions for summary judgment be granted on the ground that Plaintiff failed to exhaust his administrative remedies, as required by the PLRA. The Court further recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and that Plaintiff's cross-motion for summary judgment be denied in its entirety. Finally, the Court respectfully recommends that the Armor Defendants' counsel's motion to withdraw as counsel be granted.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else

waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
       January 23, 2024                                    /s/    Anne. Y. Shields
                                                           ANNE Y. SHIELDS
                                                           United States Magistrate Judge

15